**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

                                        Case No. 04-80193

v.                                      Hon. Gerald E. Rosen

SPENCE BERNARD GRAY,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION**
**TO REMAND OR ENFORCE STATE PROSECUTOR'S PLEA BARGAIN**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on         May 10, 2005

PRESENT:  Honorable Gerald E. Rosen
                    United States District Judge

## I.  INTRODUCTION

Defendant Spence Bernard Gray is charged in a March 3, 2004 indictment with

being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  Through the

present motion, Defendant seeks a "remand" of this case to state court so that he can

obtain the benefit of a plea bargain that was offered to him, but that he rejected, in the

course of state court proceedings arising from the same underlying April 21, 2003 act of

firearm possession.  Alternatively, he asks the Court to enforce in this federal case the

terms of the plea offer extended (and rejected) in state court, under which Defendant

would have received a 24-month term of imprisonment.

On January 6, 2005, the Court held a hearing on Defendant's motion. Having reviewed the briefs and exhibits filed by the parties, and having considered the arguments of counsel at the January 6 hearing, the Court now is prepared to rule on Defendant's motion. This Opinion and Order sets forth the Court's rulings.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

In the early morning hours of April 21, 2003, Detroit police officers stopped a vehicle being driven by Defendant Spence Bernard Gray. Defendant allegedly exited his car and fled, with the officers pursuing him on foot. After a short chase, Defendant was apprehended and placed on the ground. As Defendant followed an officer's instruction to take his hand from his pocket, he allegedly removed an object and slid it a few feet away. The officers subsequently retrieved this object, and discovered that it was an Astra 9 millimeter handgun. Defendant later gave a written, sworn statement admitting possession of the handgun.

On April 30, 2003, Defendant appeared at a state court pre-examination in 36th District Court before Judge Wade McCree. At this hearing, Defendant was advised of the state charges against him — carrying a concealed weapon, a felony firearm violation, and a felon-in-possession charge — and was informed that a preliminary examination was scheduled for May 5, 2003. During this same proceeding, the state prosecutor, Daryl M. Carson, offered Defendant the opportunity to plead guilty to the felony firearm offense in exchange for a 24-month term of incarceration and the dismissal of the other charges. Defendant, who was represented by attorney Jeffrey G. Knoche, rejected this plea offer.

2

In the course of this state court hearing, Defendant was expressly informed that his rejection of the plea offer would result in the federal prosecutor's pursuit of a federal felon-in-possession charge against him.[1]  Specifically, the state prosecutor stated that "this is a Federal gun case," and that Defendant's "potential guidelines in the Federal system . . . if he were to plead guilty are 30 to 37, greater than that if he were to go to trial."  (4/30/2003 State Court Pre-Exam Hearing Tr. at 4.)  In contrast, the state court judge observed, and defense counsel agreed, that "the offer as it stands now . . . is simply that [Defendant] still has to give two years here."  (Id.)

In light of this difference and Defendant's initial rejection of the state prosecutor's plea offer, the state prosecutor asked the state court judge to confirm that Defendant understood the ramifications of his decision:

> MS. CARSON:          Judge, may I ask that you inquire whether or not Mr. Gray understands that this rejection means that [the matter] will be referred for Federal prosecution?
>
> THE COURT:          (Interposing) Oh, yeah.
>
> MS. CARSON:          He's rejecting that offer.
>
> THE COURT:          Okay.  Yeah, Mr. Gray, the — [as] of late this year, they're referring these gun cases that aren't resolved at the early stages in the State courts with someone who has had a prior felony conviction to the Feds.  The distinction being the facts of the case aren't tried any differently.  It's just the severity level of the penalty.  But you understand that and that this offer — the offer as made is withdrawn if you have the [preliminary] exam and, likewise, the referral is made to the Feds?

---

[1] In fact, on the date of this hearing, April 30, 2003, Defendant was charged in a federal criminal complaint with a felon-in-possession offense, and a warrant was issued for his arrest.

3

Okay.

|  |  |  |
|---|---|---|
| MS. CARSON: | Do you understand that? |
| THE COURT: | Do you understand that? |
| MR. GRAY: | Yes.  Yes. |
| THE COURT: | Okay.  Good enough . . . . |

(Id. at 5-6.)

Defendant failed to appear for his May 5, 2003 preliminary examination in state court, and a warrant was issued for his arrest.  On February 23, 2004, Defendant was arrested by agents of the federal Bureau of Alcohol, Tobacco, and Firearms, and a federal magistrate ordered his detention.  On March 3, 2004, a federal grand jury indicted Defendant for being a felon in possession of a firearm.  At around this same time, the state court dismissed without prejudice the state charges pending against him.

In the course of these federal proceedings, the government has offered Defendant a Fed. R. Crim. P. 11 plea agreement with an estimated category IV criminal history and an offense level of 21, resulting in a recommended sentencing range of 57-71 months of imprisonment.  In light of this plea offer, Defendant has brought the present motion, seeking either a "remand" of this case to the state court — where Defendant presumably would seek reinstatement of the state prosecutor's earlier plea offer calling for a 24-month prison sentence — or an order enforcing the state prosecutor's 24-month plea offer in this federal proceeding.

### III.  ANALYSIS

4

Defendant's motion implicates the joint federal/state program known as "Project Safe Neighborhoods" ("PSN"), a crime reduction initiative developed by the U.S. Department of Justice. Under this program, the federal U.S. Attorney's Office in Detroit consults with the local Wayne County Prosecutor's Office to determine the jurisdiction in which firearm-related offenses should be prosecuted. If a particular defendant meets certain specified PSN criteria, he may be given an opportunity to plead guilty in state court to a state felony firearm offense in lieu of federal prosecution. Pursuant to this program, the state prosecutor offered Defendant a plea bargain calling for a two-year prison term, but he rejected this offer at the April 30, 2003 state court pre-examination hearing.

Through his present motion, Defendant maintains that the PSN initiative reflects sufficiently close cooperation and collaboration between the state and federal prosecuting authorities that the state prosecutor's 24-month plea offer should be binding on the federal prosecutor. He further contends that the federal prosecutor's failure to extend a similar offer in this case, and the substitution of a plea agreement calling for a longer term of imprisonment, constitutes a "bad faith refusal" to be bound by the prior offer made in the state court proceedings. As explained below, however, these arguments are both factually and legally flawed.

**A.      Defendant Has Failed to Identify Any Basis for the Court to "Remand" or Dismiss This Federal Case.**

As the first form of relief sought in his motion, Defendant requests that the Court

"remand" this case to the Michigan courts, presumably so that he can then urge the reinstatement of the state prosecutor's 24-month plea offer.  Alternatively, certain of Defendant's arguments, particularly at the January 6, 2005 hearing, could be viewed as seeking the dismissal of this federal proceeding, which presumably would clear the way for reinstatement of the state court prosecution — and, Defendant apparently assumes, a new opportunity to accept a 24-month plea offer.  The Court finds no basis for awarding either form of relief.

Initially, as the Government correctly points out in its response to Defendant's motion, this Court lacks the authority to "remand" this matter to the state court.  This case, in which Defendant is charged with violating a federal statute, lies squarely within the original federal court jurisdiction conferred under 18 U.S.C. § 3231.  It is entirely separate and distinct, therefore, from any state court proceeding arising from Defendant's alleged violation of state law.  See United States v. Louisville Edible Oil Products, Inc., 926 F.2d 584, 587 (6th Cir. 1991) (explaining that the "dual sovereignty" doctrine recognizes the power of state and federal authorities to bring separate criminal suits against a defendant arising out of the same underlying conduct).  This Court is powerless, therefore, to order a "remand" of this distinctly federal case to state court.[2]

---

[2]Even assuming the Court possessed such authority, well-established principles of federalism, comity, and dual sovereignty would prevent this Court from ordering that the state court proceed in any particular fashion upon the "remand" of  a criminal case that lies within that court's exclusive jurisdiction.  See, e.g., Younger v. Harris, 401 U.S. 37, 44-45, 91 S. Ct. 746, 750-51 (1971) (observing that the notion of comity rests upon "the belief that the National Government will fare best if the States and their institutions are left free to perform their separate

Nor has Defendant identified any legal basis for the Court to refrain from exercising its unquestioned jurisdiction over this federal proceeding — an outcome which presumably would entail either the outright dismissal of this case or some other form of "deference" to the state court prosecution. When asked at the January 6 hearing to suggest the ground for such relief, defense counsel pointed to the federal constitutional guarantee of due process as the source of Defendant's claimed entitlement to be prosecuted in the purportedly more favorable state court environment — or, at least, under the more favorable terms offered during the state court pre-examination proceeding. Defendant also cites <u>Blackledge v. Perry</u>, 417 U.S. 21, 94 S. Ct. 2098 (1974), in which the Supreme Court held that a state prosecutor was prohibited from bringing felony charges against a defendant who had been convicted of a misdemeanor arising from the same conduct and had exercised his statutory right of appeal from this conviction. In so ruling, the Court explained that "[d]ue process of law requires that such a potential for vindictiveness must not enter into" a state's appellate process. <u>Perry</u>, 417 U.S. at 28, 94 S. Ct. at 2103.

As is clear from subsequent Supreme Court decisions, however, such a due

───────────────

functions in their separate ways," and that federalism demands that the federal government must "vindicate and protect federal rights and federal interests . . . in ways that will not unduly interfere with the legitimate activities of the States"). Nor could there be any assurance that the state prosecutor would reinstate the plea offer extended to Defendant back in April of 2003. <u>See, e.g.</u>, <u>United States v. Pickering</u>, 178 F.3d 1168, 1174 (11th Cir. 1999) (noting that the crafting and offering of plea bargains is a matter lying entirely within a prosecutor's discretion); <u>United States v. Contreras</u>, 108 F.3d 1255, 1272 (10th Cir. 1997) (same).

process claim of vindictive prosecution is far more difficult to sustain in the context of

plea negotiations. In Bordenkircher v. Hayes, 434 U.S. 357, 98 S. Ct. 663 (1978), for

example, the Court held that a defendant's right of due process was not violated when a

state prosecutor carried out a threat to reindict the defendant on more serious charges if

he did not plead guilty to the less serious offense with which he originally was charged.

The Court explained that the presumption of vindictiveness recognized in Perry and other

cases was not appropriate in the context of plea bargaining:

> In [Perry and another prior decision, North Carolina v. Pearce, 395
> U.S. 711, 89 S. Ct. 2072 (1969),] the Court was dealing with the State's
> unilateral imposition of a penalty upon a defendant who had chosen to
> exercise a legal right to attack his original conviction — a situation very
> different from the give-and-take negotiation common in plea bargaining
> between the prosecution and defense, which arguably possess relatively
> equal bargaining power. The Court has emphasized that the due process
> violation in cases such as *Pearce and Perry* lay not in the possibility that a
> defendant might be deterred from the exercise of a legal right, but rather in
> the danger that the State might be retaliating against the accused for
> lawfully attacking his conviction.
>
> To punish a person because he has done was the law plainly allows
> him to do is a due process violation of the most basic sort, and for an agent
> of the State to pursue a course of action whose objective is to penalize a
> person's reliance on his legal rights is patently unconstitutional. But in the
> "give-and-take" of plea bargaining, there is no such element of punishment
> or retaliation so long as the accused is free to accept or reject the
> prosecution's offer.
>
> Plea bargaining flows from the mutuality of advantage to defendants
> and prosecutors, each with his own reasons for wanting to avoid trial.
> Defendants advised by competent counsel and protected by other
> procedural safeguards are presumptively capable of intelligent choice in
> response to prosecutorial persuasion, and unlikely to be driven to false self-
> condemnation. Indeed, acceptance of the basic legitimacy of plea

8

bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.

While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable — and permissible — attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

. . . . In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. To hold that the prosecutor's desire to induce a guilty plea is an unjustifiable standard, which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself. Moreover, a rigid constitutional rule that would prohibit a prosecutor from acting forthrightly in his dealings with the defense could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged.

Bordenkircher, 434 U.S. at 362-65, 98 S. Ct. at 667-69 (internal quotation marks,

citations, and footnote omitted).

Similarly, in United States v. Goodwin, 457 U.S. 368, 102 S. Ct. 2485 (1982), the

9

Court declined to presume vindictiveness in a case where the defendant was charged with a felony offense after he declined to plead guilty and demanded a trial by jury on the less serious misdemeanor charges originally brought against him.  Where Bordenkircher had focused on the particular context of plea negotiations, the Goodwin Court more generally found it inappropriate to presume that a prosecutor's pretrial decisions might be motivated by vindictiveness:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting.  In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance.  At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystalized.  In contrast, once a trial begins — and certainly by the time a conviction has been obtained — it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted.  Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

> In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor.  Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury.  It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter.  The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

> Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted.  A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to

10

determine the extent of the societal interest in prosecution.  An initial
decision should not freeze future conduct.  As we made clear in
*Bordenkircher,* the initial charges filed by a prosecutor may not reflect the
extent to which an individual is legitimately subject to prosecution.

Goodwin, 457 U.S. at 381-82, 102 S. Ct. at 2492-93 (footnote omitted).

In light of these rulings, a number of courts have rejected claims of vindictive

prosecution in federal cases brought after a defendant declined to plead guilty or to

cooperate with the authorities in a state court proceeding arising from the same

underlying conduct.  In United States v. Williams, 47 F.3d 658, 659 (4th Cir. 1995), for

example, a state prosecutor, Michael Cummings, advised defendant Nathaniel Williams

and his attorney that he would refer the case for federal prosecution unless Williams pled

guilty to the pending state drug charges and agreed to cooperate with the authorities, and

Cummings further cautioned "that federal prosecution would subject Williams to a much

more severe mandatory minimum sentence."  Although Williams agreed to enter a guilty

plea, he declined to cooperate with the police, citing fears for the safety of himself and

his family.  Accordingly, state prosecutor Cummings, "who was cross-designated as a

Special Assistant United States Attorney, presented Williams's case to the federal grand

jury," and Williams moved to dismiss the resulting federal indictment on grounds of

vindictive prosecution.  Williams, 47 F.3d at 660.

The district court dismissed the indictment, but the Fourth Circuit reversed,

reasoning in pertinent part:

We conclude that Williams has not made out a claim for

11

prosecutorial vindictiveness.  Although due process requires that a criminal defendant remain free from even the apprehension of a retaliatory motivation on the part of the state, Cummings's conduct did not rise to that level.  Although Cummings threatened to refer Williams's case for a more severe federal prosecution if Williams did not agree to plead guilty to the state charges and cooperate with the Virginia police, and carried out his threat when Williams refused to cooperate, the decision to seek a more severe indictment did not create the apprehension of a retaliatory motivation on the part of the State.  In the context of plea bargaining, a prosecutor may legitimately threaten a more severe indictment in order to pressure a defendant to plead guilty and to cooperate with the police.

Cummings could have referred Williams's case for federal prosecution without entering into plea negotiations.  Federal prosecution was appropriate based on the amount of cocaine with which the defendant was involved.  In his affidavit in support of the government's motion for reconsideration (after the district court dismissed the case), Cummings explained that he was going to refer Williams's case for federal prosecution because of the quantity of cocaine involved, but he held off because [a state detective] wanted to first determine whether Williams would cooperate.  Unless the state received a concession such as cooperation, the state would normally have referred Williams's case for federal prosecution . . . .  Williams was not entitled to a plea bargain, and Cummings could have referred the case to federal authorities without entering into plea negotiations.  By offering Williams the option of pleading guilty to the state charges and cooperating with the police, Cummings gave Williams a chance to avoid federal prosecution.  Although the plea offer took the form of a threat, Williams nonetheless gained an opportunity he would not have had if Cummings had referred the case to federal authorities without making the plea offer.

If the prosecutor had initially sought a federal indictment against Williams and then offered more lenient state charges if Williams pled guilty and agreed to cooperate, the prosecutor's actions would not have violated Williams's due process rights.  The prosecutor simply reversed his tactics by originally bringing charges under Virginia law and threatening more severe federal charges if Williams did not agree to cooperate.  If the prosecutor could initially bring more severe charges and negotiate down to more lenient charges if the defendant cooperates, we see no problem [in] allowing the prosecutor to bring more lenient initial charges and threaten to

12

bring more severe charges if the defendant refuses to cooperate.

Williams, 47 F.3d at 663-64 (footnotes and citation omitted).

Indeed, the courts have been particularly reluctant to uphold claims of vindictive prosecution in cases involving separate sovereigns. The Seventh Circuit has observed that "[w]here there are successive prosecutions by two sovereigns, . . . it is improbable that a realistic likelihood of vindictiveness exists," because, among other reasons, "a personal prosecutorial stake in the proceedings is minimized." United States v. Heidecke, 900 F.2d 1155, 1159-60 (7th Cir. 1990). Similarly, the Ninth Circuit has cited principles of dual sovereignty in holding that "the involvement of separate sovereigns tends to negate a vindictive prosecution claim." United States v. Robison, 644 F.2d 1270, 1273 (9th Cir. 1981); see also United States v. Dickerson, 975 F.2d 1245, 1251-52 (7th Cir. 1992). More generally, in United States v. Beede, 974 F.2d 948, 951-52 (8th Cir. 1992), the Eighth Circuit catalogued the circumstances under which the courts have permitted a subsequent federal prosecution despite a prior state prosecution involving the same conduct, and found in that case that a federal prosecution following a refusal to plead guilty to state charges did not violate due process or constitute prosecutorial vindictiveness.

The Sixth Circuit also has spoken on this subject, in decisions that considerably undermine the due process claim advanced by Defendant here. In United States v. Allen, 954 F.2d 1160, 1165 (6th Cir. 1992), for example, the defendant noted that the

13

investigation of his alleged drug offenses was conducted solely by Tennessee law enforcement officials, and he asserted "that the case was merely referred to the federal prosecutors due to the stiffer sentences provided for by federal law."  Thus, the defendant maintained that he had been "treated unfairly compared to Tennessee defendants in similar prosecutions in state court."  Allen, 954 F.2d at 1165.  The Court rejected this challenge to the defendant's prosecution in federal court, reasoning that "[p]rosecutors are given great discretion in determining which cases will be prosecuted."  954 F.2d at 1166.  Citing Bordenkircher, the Sixth Circuit observed that this discretion is properly exercised so long as there is probable cause to believe that the defendant has committed a federal offense, and so long as the decision is not improperly "based on a defendant's race, sex, religion, or exercise of a statutory or constitutional right."  954 F.2d at 1166.  More specifically, the Court held that a prosecutor's decision may properly be based "on the penalties available upon conviction."  954 F.2d at 1166.

In United States v. Odom, 42 F.3d 1389, 1994 WL 669675 (6th Cir. Nov. 29, 1994) (unpublished decision), the Sixth Circuit held that even a *successful* state prosecution does not bar a subsequent federal prosecution involving the same conduct. In that case, defendant Jimmy Odom had pled guilty to a state concealed weapon charge, under a plea agreement in which the state authorities promised not to charge him as a habitual offender.  At around the same time, however, the federal authorities were compiling a database of parolees who had committed three or more violent felonies, and

14

were targeting these individuals for prosecution under the Armed Career Criminal Act,

18 U.S.C. § 924(e).  A federal agent determined that Odom apparently fit the profile for

prosecution, and contacted Odom's parole officer to verify his criminal record.  In

addition, a state presentence investigator telephoned the federal agent and advised him of

Odom's recent state court plea.  After conducting further investigation of the underlying

conduct that had triggered the state concealed weapon charge and guilty plea, the federal

agent referred the matter to the U.S. Attorney's office, which in turn sought and obtained

a federal indictment charging Odom as a felon-in-possession.

On appeal, Odom argued that state officials had improperly "triggered" his federal

prosecution by providing information to a federal agent, and that "this interaction

between state and federal authorities resulting in his federal prosecution clearly violated

his due process rights."  Odom, 1994 WL 669675, at *2.  The Court disagreed:

> In the instant case, even if state authorities did "trigger" a federal
> investigation of Odom's activities, this action did not amount to a violation
> of Odom's due process rights.  The subsequent federal investigation
> revealed that Odom had violated federal law, and the federal authorities
> chose to pursue a federal prosecution.  Under [a Seventh Circuit decision]
> and *Allen,* this decision to prosecute did not violate Odom's due process
> rights.

1994 WL 669675, at *2.


Finally, the Sixth Circuit recently held that a downward sentencing departure was

not justified under circumstances similar to those presented here.  In United States v.

15

Forrest, 402 F.3d 678 (6th Cir. 2005), defendant Antonio Forrest was apprehended by Louisville police officers on suspicion of his involvement in an armed robbery of a convenience store.  Forrest initially was charged with robbery in a state court proceeding, and the federal prosecutor "as much as admit[ted]" that a subsequent federal indictment stemmed from Forrest's "refusal to plead guilty to the state charge."  Forrest, 402 F.3d at 683.  At sentencing following his federal court conviction, the district court granted a downward departure, based in part upon a concern about "the suggestion of punitive federal prosecution."  402 F.3d at 690-91.  The Sixth Circuit reversed, holding that the district court's downward departure inquiry should have been focused on Forrest's underlying conduct, and not on the consideration whether he might have received a shorter sentence if he had pled guilty to the state robbery charge.  402 F.3d at 690-91.  Although this decision was rooted primarily in the language of the federal sentencing guidelines, the Court observed that its conclusion was reinforced by the rule that "a federal indictment obtained against one who has been threatened with federal prosecution for refusing to plead guilty to state charges is not subject to dismissal on grounds of 'vindictive prosecution.'" 402 F.3d at 691 (citing with approval the Fourth Circuit's decision in Williams, supra).

Under this uniform weight of authority, the Court readily concludes that the federal prosecutor in this case did not violate Defendant's right to due process by seeking a federal grand jury indictment after Defendant elected not to plead guilty to state charges

16

arising from the same conduct.  Defendant does not contend that the federal prosecutor

lacked probable cause to seek an indictment charging him with a federal felon-in-

possession offense.  Nor can he successfully argue, in the face of the above-cited

decisions, that the federal prosecutor acted vindictively by seeking this indictment only

after he refused the 2-year plea deal offered in the state court proceeding.  Finally, he

does not suggest that the federal prosecutor's charging decision was based upon improper

considerations such as race, religion, or the exercise of a constitutional right.[3]

Accordingly, the Court is unable to discern any constitutional barrier to Defendant's

prosecution in federal court for a suspected violation of federal law.

**B.    Defendant Has Failed to Identify a Basis for the Court to Order the Reinstatement of the State Prosecutor's Plea Offer in This Federal Proceeding.**

Apart from seeking a "remand" or dismissal of this federal case, Defendant argues

in the alternative that he should be entitled in this federal proceeding to the benefit of the

2-year plea bargain that he was offered — and that he expressly rejected — near the

outset of the state court proceeding.  Once again, however, the Court finds that Defendant

has failed to identify any authority for the award of such relief here.

In an effort to establish the relevance of the state prosecutor's plea offer to the

---

[3]While Defendant, of course, had the right to reject the state prosecutor's plea offer, and to instead insist upon his constitutional right of a trial by jury, the Supreme Court's decision in <u>Bordenkircher</u> establishes, and the other above-cited cases confirm, that a federal prosecution following this assertion of a constitutional right, without more, is not "vindictive" and does not violate the federal constitutional guarantee of due process.

17

present federal proceeding brought by a separate sovereign, Defendant cites to cases holding that, under the appropriate circumstances, a federal court may be bound by a state court plea agreement if the federal prosecutor was sufficiently involved in the state plea bargaining process.  See, e.g., Finch v. Vaughn, 67 F.3d 909, 915 (11th Cir. 1995); United States v. Fuzer, 18 F.3d 517, 520 (7th Cir. 1994); Pinaud v. James, 851 F.2d 27, 30-31 (2d Cir. 1988).  Here, Defendant suggests that the requisite degree of federal/state cooperation "[c]learly . . . exists in this case," (Defendant's Motion, Br. in Support at 7), by virtue of the mere existence and operation of the Project Safe Neighborhoods program.  Yet, there is no evidence that the state prosecutor was compelled by the terms of the PSN program to offer Defendant a 2-year plea deal, or that the federal authorities otherwise were directly involved in the decision to extend this offer to Defendant.

More importantly, Defendant *rejected* this proposed plea agreement.  Thus, even if the state and federal authorities closely cooperated in crafting the 2-year plea deal offered in the state court proceeding, there would be no possible ground for holding the federal prosecutor to the terms of an agreement to which Defendant himself refused to be bound. To be sure, if Defendant had accepted this offer, and if he could establish the federal prosecutor's involvement in the plea bargaining process that led to this offer, he might perhaps be in a position to argue that the federal prosecutor should be precluded from pursuing a federal felon-in-possession charge.  Even under these circumstances, however, there is no indication that the federal authorities would have failed to keep their end of

this alleged bargain if Defendant had agreed to the plea offer extended by the state prosecutor.

Beyond this missing factual predicate — namely, the absence of any agreement that could bind the federal prosecutor in this case — Defendant has failed to suggest any legal basis for this Court to order the reinstatement of a plea offer previously made to him in the course of a separate state court proceeding. The only such authority even hinted at in Defendant's motion arises from the Sixth Amendment guarantee of effective assistance of counsel. In particular, Defendant cites the decision in United States v. Nixon, 315 F. Supp.2d 876 (E.D. Mich.), amended on reconsideration, 318 F. Supp.2d 525 (E.D. Mich. 2004), another case involving the PSN initiative. The defendants in that case claimed that they had been misinformed by their state court attorneys regarding the sentences they would face if they rejected the state prosecutor's plea offer and then were prosecuted in federal court. The Court viewed these allegations as "support[ing] a finding of ineffective assistance of counsel" at the state level, and found that further inquiry and an *in camera* review of PSN-related materials were warranted. Nixon, 315 F. Supp.2d at 878-79.

Such an ineffective assistance theory is unavailing here, for a number of reasons.[4]

_____

[4]As a threshold matter, the Court notes that it is merely assuming for present purposes, without in any way deciding, that there is some jurisdictional basis for its assessment of the performance of Defendant's state court counsel. Ordinarily, of course, such an inquiry is undertaken in the context of a motion under 28 U.S.C. §§ 2254 or 2255, in which a prisoner contends that he is being held in state or federal custody in violation of federal law or the U.S. Constitution. Here, of course, Defendant is not in state custody, the state charges against him have been dismissed, and the federal case has not yet proceeded to trial. Notably, none of the cases cited in Dixon would provide any support for a federal court to examine the conduct of counsel in a state court proceeding that was dismissed before trial without the entry of judgment

19

First, and most significantly, Defendant has not even alleged, much less demonstrated, that he received ineffective assistance from his state court counsel as he considered whether to accept the state prosecutor's plea offer. To the contrary, Defendant affirmatively acknowledged on the record at the state court pre-examination hearing that he understood the terms of the state's offer, and that he understood that he would face federal prosecution (and potentially more severe penalties) if he declined this offer. (See 4/30/2003 State Court Pre-Exam Hearing Tr. at 5-6.) In addition, the state prosecutor informed Defendant on the record that "[h]is potential guidelines in the Federal system . . . if he were to plead guilty are 30 to 37 [months], greater than that if he were to go to trial," and the state court judge further advised him that the state prosecutor's offer "is withdrawn" and that the matter would be referred to the federal prosecutor if he elected not to plead guilty and instead proceed with the state court preliminary examination. (Id. at 4-6.) Likewise, in his present motion, Defendant candidly admits that he was advised at the state court hearing "that if he did not wish to enter a guilty plea, the state prosecution would be dismissed and that he would be immediately charged under federal law wherein, the penalties for the same offenses and based on the same facts would be considerably greater than the penalties under state law." (Defendant's Motion at ¶ 4.) Under this record, Defendant would face considerable difficulty in identifying any shortfall in his legal representation during the state court proceeding.

_____

or the imposition of any sentence.

Even assuming, however, that Defendant could identify any deficiency in the performance of his state court counsel, he has failed to show any resulting prejudice.  The Sixth Circuit has held that the two-pronged analytical framework of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), applies to challenges to an attorney's competence during the course of plea negotiations.  <u>See</u> <u>Magana v. Hofbauer</u>, 263 F.3d 542, 547 (6th Cir. 2001); <u>Turner v. Tennessee</u>, 858 F.2d 1201, 1205-06 (6th Cir. 1988), <u>vacated on other grounds</u>, 492 U.S. 902, 109 S. Ct. 3208 (1989).  Under this standard, Defendant must show both that he was "gross[ly] misadvi[sed]" as to the potential consequences of his rejection of the state prosecutor's 2-year plea offer, and that, but for this flawed advice, "there is a reasonable probability that he would have pleaded guilty." <u>Magana</u>, 263 F.3d at 547-48.

Assuming, once again — and despite all evidence to the contrary — that Defendant was misadvised as to the potential consequences of his rejection of the state prosecutor's plea offer, Defendant has neither alleged nor shown that he would have accepted this deal and entered a guilty plea.  The best indication of this, of course, is that Defendant elected ***not*** to do so at the time, despite his express acknowledgment in his motion that he was advised of the impending federal prosecution and the potentially greater penalties he faced in federal court.  Although the Sixth Circuit has yet to decide this issue in a published opinion, other courts have been unwilling to hold that the "reasonable probability" standard is satisfied by a defendant's own, self-serving

21

statement that he would have accepted a plea offer if advised differently by his counsel at the time.  See, e.g., Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991); Yarbrough v. United States, 51 F.3d 274, 1995 WL 149143, at *2-*3 (6th Cir. Apr. 4, 1995).  But see Magana, 263 F.3d at 547 n.1 (noting that the Sixth Circuit "has not explicitly adopted" this standard).  Here, of course, Defendant has not even offered his own statement, much less any other evidence, that he would have accepted the state prosecutor's plea offer if properly advised by counsel at the time.

Nor does the record give rise to any sort of presumption of prejudice of the sort addressed by the Sixth Circuit in Magana.  In that case, the Court's finding on the "reasonable probability" prong of the Strickland analysis rested in significant part upon the "large disparity" of 30 years between the term of imprisonment offered to the defendant in the rejected plea deal and the maximum sentence he faced if convicted at trial.  Magana, 263 F.3d at 551-52.  Here, in contrast, the state prosecutor offered a 24-month term of imprisonment, while the federal prosecutor states that Defendant has been offered a plea agreement with a sentencing range of 57-71 months.  The Court cannot say that this difference is so great as to compel the conclusion that Defendant was prejudiced by the purportedly flawed advice of his state court counsel.

Finally, and in stark contrast to the above-cited case law addressing claims of ineffective assistance of counsel *after* conviction and sentencing, any claim of prejudice here would be grossly premature, to say the least.  After all, in order to find a "reasonable

probability" that Defendant would have entered a guilty plea in the state court proceeding — or to find, more generally, that Defendant has somehow been prejudiced by his rejection of the state prosecutor's plea deal — the Court necessarily must assume (i) that Defendant is, in fact, guilty, and (ii) that a jury will find him guilty beyond a reasonable doubt at a forthcoming federal trial. Absent these predicates, any advice by Defendant's state court counsel that he should reject a 2-year plea deal would appear to be wholly unimpeachable. The Court is unwilling to engage in such sheer and unwarranted speculation, even assuming a jurisdictional basis to do so.

In the end, Defendant's motion rests upon the generalized contention that it is somehow "unfair" that he can no longer take advantage of the state plea offer he rejected back in April of 2003, and that the federal prosecutor is unwilling to extend the same offer in this case. These appeals to "fairness," however, rest upon misguided notions of "rights" and "entitlements" arising from the PSN program. This initiative presumably exists and will continue only so long as state and federal prosecutors see fit, and reflects a degree of coordination of the sovereign powers that each would be free to separately exercise in the absence of such a program.[5] As such, this understanding between separate

---

[5]Notably, in Allen, supra, the defendant complained that state law enforcement officials enjoyed unfettered discretion in deciding whether to refer a case for federal prosecution. The Sixth Circuit held that due process did not dictate the enactment of a policy governing such referrals, so long as the federal prosecutors "are not acting as rubber stamps and exert their own discretion as to whether or not to prosecute." 954 F.2d at 1166.

Viewed in this context, it is somewhat ironic that Defendant here would argue that his due process rights have been violated as a result of the policies reflected in the PSN initiative. This program, after all, serves to regularize and coordinate the prosecution of state and federal

sovereigns as to how a certain category of cases typically will be prosecuted can hardly

be said to confer rights upon defendants as third-party beneficiaries.  Certainly, there is

no indication that the PSN initiative was intended to operate for the benefit of criminal

defendants.  To the contrary, it seems evident that the PSN program is intended solely to

coordinate the efforts of state and federal authorities so that gun-related offenses are

prosecuted more vigorously and efficiently.

If the terms of this program call for a sovereign to forgo prosecution of a particular

violation of its law, the alleged offender can hardly claim an "entitlement" not to be

prosecuted.  Either sovereign presumably could abandon the PSN initiative at any time,

or even deviate from its terms on a case-by-case basis, and instead exercise its

independent authority to prosecute a violation of its own law.  Viewed in its proper

context, then, the PSN program does not give rise to any "entitlement" to a particular plea

offer — at most, it merely provides an opportunity for certain defendants to accept plea

offers through which they may avoid the separate state and federal prosecutions that they

_____

offenses in cases like this one.  Criminal defendants surely benefit from a program like the PSN
initiative that allows them to predict what a separate and otherwise independent federal
sovereign will do if they accept or reject a state prosecutor's plea offer.  Absent such a program,
the state prosecutor likely would be unable and unwilling to say how the federal authorities
might proceed, and a defendant would be left largely in the dark on this matter as he
contemplated whether to accept a state plea offer.  See Odom, 1994 WL 669675, at *3-*4
(holding that a state prosecutor has no duty to disclose the possibility of federal prosecution
during plea bargaining); United States v. Jordan, 870 F.2d 1310, 1317-18 (7th Cir. 1989)
(holding that the possibility of federal prosecution is not a "direct consequence" that must be
disclosed in a state plea agreement, even where the state prosecutor is aware of this possibility).
In this case, by contrast, Defendant was expressly advised that he would be federally prosecuted
and would face potentially stiffer penalties if he rejected the state prosecutor's plea offer.  It is
difficult to see how this additional information could trigger a due process violation.

otherwise might face.

Here, of course, Defendant was given precisely this opportunity, and he chose not to take it.  As noted, he does not claim that he was poorly advised by counsel when he rejected the plea bargain offered by the state prosecutor.  Moreover, the record reflects that Defendant was expressly advised that he would face federal prosecution if he rejected the state plea offer, and that his sentence in the event of a federal court conviction likely would be longer than the 24-month prison term offered under the state prosecutor's plea bargain.  Under these circumstances, any claim of "unfairness" rings particularly hollow, because Defendant was given the full benefit of any possible advantage bestowed upon criminal defendants under the PSN initiative, and instead chose, presumably knowingly and voluntarily, to forgo this benefit and face prosecution in federal court.  In short, Defendant has been given the full benefit of the bargain he selected.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's October 22,

2004 Motion to Remand or Enforce State Prosecutor's Plea Bargain is DENIED.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  May 10, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record
on May 10, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager